# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>(1) one black Apple iPhone 16 Pro Max cell phone (Serial Number: LR9HY65K65); and (2) one black iPhone 14 Pro Max cell phone (Serial Number: FNQQFM9QMR) | )<br>)<br>)  Case No.  8:25-SW-120 (MJK)<br>)<br>)  USAO No. 2025R00396<br>) |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) | Transport and move aliens and attempt to do so |

The application is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Chase D. Beatty
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date: 5/23/2025

*Judge's signature*

City and state: Syracuse, New York                Hon. Mitchell J. Katz, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, Chase D. Beatty, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant authorizing the examination of: (1) one black Apple iPhone 16 Pro Max cell phone (Serial Number: LR9HY65K65); (2) one black iPhone 14 Pro Max cell phone (Serial Number: FNQQFM9QMR); (hereinafter "the Devices"), currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), Champlain Border Patrol Prosecution Unit and assigned to the Champlain Border Patrol Station. I have been a Border Patrol Agent since June of 2018. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3. I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling

of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4.   The applied-for warrant would authorize the forensic examination of the Devices, as described in Attachment A, for the purpose of identifying electronically stored data described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that a violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) (transport and move or attempt to transport and move aliens) has been committed by SINGH, Manjinder. There also is probable cause to search the property described in Attachment A for evidence and instrumentalities of this crime, as described in Attachment B.

5.   This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.   The property to be searched is: (1) one black Apple iPhone 16 Pro Max cell phone (Serial Number: LR9HY65K65); and (2) one black iPhone 14 Pro Max cell phone (Serial Number: FNQQFM9QMR) (hereinafter "the Devices") all currently located at 1969 Ridge Rd, Champlain, New York 12919.

## PROBABLE CAUSE

7.   On or about May 15, 2025, this Court signed a criminal complaint charging SINGH with the above-referenced crime. A copy of the complaint is attached as **Exhibit 1**, and the allegations in the narrative accompanying the complaint are incorporated by referenced here.

8. During a search of the defendant's person and property incident to arrest, investigators located the Devices. Singh was shown both Devices during an interview, confirmed that they were his, and consented to a search of them. Although the consent should provide lawful authority for the searches, in an abundance of caution I am applying for the requested warrant.

9. Based on my training and experience in this and other cross border criminal investigations I have been involved with, including individuals entering the United States illegally, individuals crossing the border illegally will often communicate and coordinate with someone to pick them up once in the United States or to inform them that they successfully crossed the border via cellular telephone. Individuals involved in crossing the border illegally often use a cellular telephone's GPS function to search for and map out potential crossing and pickup locations and to navigate to such places. An additional function of cellular telephones that can be utilized by individuals crossing illegally includes the camera, individuals will often take photos of where they are crossing the border illegally.

10. Additionally, smugglers often communicate with each other using cellular phones and downloaded applications to coordinate smuggling events. Smartphones, such as the Devices can also be used to access social media. Based on my training, knowledge, and experience of alien smuggling, I know that social media platforms, such as WhatsApp, are often used by smugglers to find customers and for communication between smugglers and aliens illegally entering the United States.

11. The Devices are currently in the lawful possession of the United States Border Patrol and have been since May 15, 2025. I seek this warrant to be certain that further examination of the Devices will comply with the Fourth Amendment and other applicable laws. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to

the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of law enforcement as described above.

## TECHNICAL TERMS

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.     IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    b.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

    c.     Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard

drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    f. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer

5

programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

13. Based on my training, experience, and research, I know that cellular phones and GPS devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the

7

device to human inspection in order to determine whether it is evidence described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

17. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

18. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

19. Because the Devices are in the possession of law enforcement, I request authority to execute the warrant at any time in the day or night.

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Chase D. Beatty
Border Patrol Agent, Champlain Station
United States Border Patrol

I, the Honorable Mitchell J. Katz United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by Teams Video Conference on May 23, 2025 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Mitchell J. Katz
United States Magistrate Judge

# Exhibit 1

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>SINGH, Manjinder,<br><br>**Defendant.** | )<br>)<br>)  Case No.   8:25-MJ-150 (MJK)<br>)<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of May 15, 2025, in the county of Clinton in the Northern District of New York, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) | Transport and move or attempt to transport and move five aliens, knowing and in reckless disregard of the fact that the alien had come to, entered, and remained in the United States in violation of the law, by means of transportation or otherwise, in furtherance of the alien's violation of law. |

This criminal complaint is based on these facts:

Continued on the attached sheet.

_____
Complainant's signature

Chase D. Beatty, Border Patrol Agent
_____
Printed name and title

Attested to be the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: _____

Digitally signed by Mitchell J Katz
Date: 2025.05.16 14:47:24 -04'00'

City and State:   Syracuse, NY        Hon. Mitchell J. Katz,   U.S. Magistrate Judge

*United States of America v. SINGH, Manjinder*

On May 15, 2025, at approximately 7:45 a.m., Champlain Border Patrol Agents received a call from an off-duty Customs and Border Protection officer (W-1) who relayed that W-1 saw a dark Sport Utility Vehicle (SUV) that loaded up several people from the woods near the United States / Canada international border and then traveled west on Perry Mills Road, in Champlain, NY. Perry Mills Road is a remote county road that parallels the international boundary with Canada. Because of this road's proximity to the international boundary, it is frequently utilized by smugglers for illicit cross border activities. Approximately five minutes later, agents observed a matching color vehicle traveling east on Route 11 toward Interstate 87, a commonly route for alien smuggling.

At approximately 7:50 a.m., agents began to follow the SUV travelling southbound on Interstate 87. While following the vehicle, the primary agent noticed numerous occupants inside. The primary agent noticed the driver of the vehicle checking his mirrors multiple times in a nervous manner and one passenger jumped from the second row to the third row. Interstate 87 is a main highway in the Champlain area of responsibility often utilized to further the travel of illegal aliens into the U.S. Given the sequence of events, the vehicle's driving pattern, and the numerous occupants, the agent initiated a vehicle stop to conduct an immigration inspection of the vehicle's occupants.

The agent approached the vehicle, identified himself as a United States Border Patrol Agent, and questioned the occupants as to their citizenship. The driver (later identified as SINGH, Manjinder) was questioned regarding his citizenship. He said he was a U.S. citizen and presented a valid U.S passport.

The agent noticed numerous passengers inside the vehicle. The agent looked in the SUV's cargo area and saw a total of seven passengers, one of whom was not in a designated seat. The people in the passenger and cargo area were covered in debris and mud, and their clothing was wet. The agent attempted to question the passengers regarding their citizenship, but none of them could speak English nor produce any documentation allowing them to remain in the United States legally. The SUV only had seven seat belts, but not all seats were in use because some were folded down and occupied by a substantial volume of luggage. SINGH and the seven passengers were transported to the station for further investigation.

While the vehicle stop was ongoing, other Champlain Border Patrol Agents were waved down on Perry Mills Road by a local citizen (W-2). W-2 said W-2 observed multiple people running back into the woods near where the SUV loaded up with the people in the SUV. Upon further search of that area, agents apprehended three additional people. The agents conducted an immigration inspection of the three people, and they admitted being citizens and nationals of India. These three people did not have the proper immigration documents to be legally present in the United States. They were placed under arrest and transported back to the Champlain Border Patrol Station for further investigation.

At the station, the subjects' biographical information and fingerprints were entered into Department of Homeland Security databases. The adult passengers are citizens of India, and the juveniles are citizens of Canada. A family unit consisting of people with initials P.K., J.D., R.D., and Z.D. had a prior apprehension with the Border Patrol on 02/12/2025 near Blaine, WA. P.K. was processed as an Expedited Removal with Credible Fear, and her children were processed under 212(f) Direct Repatriation enumerated in Section 3 of Proclamation 10888, Guaranteeing the States Protection against Invasion due to being Canadian Citizens. P.K., J.D., R.D., Z.D. were all returned to Canada on 02/27/2025. Prior to the May 15, 2025, event, R.D. and J.D., two out of the three children, were admitted into United States through the Champlain Port of Entry with SINGH with a document titled "Recommended Consent Letter for Children Traveling Abroad." The three other adult passengers, M.C., G.K., and K.M. do not have any prior apprehensions with the Border Patrol. Record checks further revealed that

*United States of America v. SINGH, Manjinder*

none of the five passengers possessed any immigration documentation to be within the United States legally. Record checks revealed that SINGH is a U.S. Citizen.

At the station, SINGH was issued *Miranda* warnings and agreed to speak with law enforcement. SINGH also gave consent to search the two cellphones he had in his possession. SINGH stated that he flew into Canada from Columbus, Ohio to visit family and to bring two of his sister's children to the U.S. to spend time with him. SINGH stated he borrowed the vehicle he used to pick up the people from his sister's husband's friend for a week and would later return it back to Canada. SINGH stated he brought the two children into the U.S. through the Champlain Port of Entry the night of May 14, 2025. They drove to Albany, NY to stay the night and were planning on going back to Columbus, Ohio the next day. Early in the morning of May 15, 2025, he received a call from his sister, P. K., that she needed SINGH's help crossing the border because P.K. was falling through the woods and her child was in distress. When SINGH got close to the pickup location, he noticed multiple people running out of the woods towards his vehicle. SINGH stated he was only there to pick up his sister. SINGH showed agents a group conversation with more members in the chat than they were people arrested in this event. SINGH claimed he did not know the people who got into his vehicle and planned on dropping them off in an unknown location before going back to Ohio. The people did not pay him, according to SINGH, but he had $4,200 USO and $2,200 Indian Rupee in his possession at the time of his arrest. SINGH stated he drew the money out of his bank account. SINGH stated he knew his sister crossed the border illegally but, to him, he believes he did not commit a crime.

## ATTACHMENT A

### Property to be Searched

The properties to be searched are:

    a. Device 1: Black Apple iPhone 16 Pro Max cell phone (Serial Number: LR9HY65K65).

    b. Device 2: Black Apple iPhone 14 Pro Max cell phone (Serial Number: FNQQFM9QMR).

The Devices are currently located at 1969 Ridge Rd, Champlain, New York 12919. They are depicted below:




This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

All records on the Devices described in Attachment A that relate to violations of 8 U.S.C. § 1324(a)(1)(A)(ii) involving Manjinder SINGH, including:

1. Communications and messages concerning any transportation of aliens within the United States, including to/from data and message content.

2. GPS or other location information showing routes of transportation to / from the area of the international border concerning transportation of aliens;

3. Pictures or videos of locations involved in the transportation of aliens or the plan or attempt to transport aliens;

4. Evidence of a motive, plan, and/or intent to transport aliens, including web search activity;

5. Evidence that SINGH conspired with anyone else to attempt to transport or to transport aliens within the United States; and

6. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.